UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LIGHT GUARD SYSTEMS, INC., | 3:10-cv-0737-LRH-RAM |
| Plaintiff, | |
| v. | ORDER |
| SPOT DEVICES, INC., | |
| Defendant. | |

Before the court is plaintiff Light Guard Systems, Inc.'s ("Light Guard") motion for a preliminary injunction. Doc. #2.[1] Defendant Spot Devices, Inc. ("Spot Devices") filed a response (Doc. #20) to which Light Guard replied (Doc. #33). A hearing on the motion was held on Wednesday, July 13, 2011.

**I.     Facts and Background**

Plaintiff Light Guard is a California corporation that manufactures and distributes in-roadway warning light ("IRWL") systems. An IRWL system is a traffic warning system within or on the road surface that alerts approaching traffic to the presence of a pedestrian in a crosswalk.

Light Guard is the assignee and sole owner of United States Patent no. 6,384,742 ("the '742 patent") issued on May 7, 2002, to Light Guard founder Michael A. Harrison

---

[1] Refers to the court's docket number.

1  ("Harrison"). A copy of the patent, titled "Pedestrian Crosswalk Signal Apparatus - Pedestrian
2  Crosswalk," is attached at Exhibit A to the complaint. Doc. #1, Exhibit A. Claim 1 of the '742
3  patent claims:

4      A pedestrian crosswalk signal apparatus to alert approaching vehicle traffic to the
5      presence of a pedestrian in a pedestrian crosswalk, said pedestrian crosswalk signal
6      apparatus comprising:
7      a roadway, said roadway having a surface;
8      a plurality of signal head members mounted on said roadway surface and
9      extending at least some distance across said roadway and above said roadway surface
10      to at least partially designate a pedestrian crosswalk, each of said signal head
11      members conditioned to withstand contact by vehicle traffic, each of said signal head
12      members including at least one light source adapted to direct a beam of light from
13      said roadway surface in the direction of the approaching vehicle traffic and away
14      from the pedestrian crosswalk, and adjacent to and generally parallel to said roadway
15      surface; and
16      activation means to selectively illuminate said plurality of signal head members
17      light sources to warn the drivers of the approaching vehicles that the pedestrian has
18      entered the pedestrian crosswalk.

19  Doc. #1, Exhibit A, '742 Patent, Col. 8:2-22.

20      Defendant Spot Devices is a Nevada corporation that also manufactures and distributes
21  IRWL systems including the RS 200 and RS 320 IRWL systems. *See* Doc. #3, Harrison Decl.,
22  Exhibit E-1 (RS 320); Exhibit I (RS 200).

23      On November 23, 2010, Light Guard filed a complaint against Spot Devices for patent
24  infringement contending that the RS 200 and RS 320 designs infringe Claim 1 of the '742 patent.
25  Doc. #1. Along with the complaint, Light Guard filed the present motion for a preliminary
26

1  injunction seeking to enjoin the distribution of the RS 200 and RS 320 systems. Doc. #2.

2  **II. Legal Standard**

3  A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear
4  showing that the plaintiff is entitled to such relief." *Id*. (*citing Mazurek v. Armstrong*, 520 U.S. 968,
5  972 (1997) (per curiam)). A court may only grant a preliminary injunction upon a showing that:
6  (1) the petitioner is likely to succeed on the merits of his complaint; (2) irreparable harm will result
7  in the absence of an injunction; (3) the balance of equities favors an injunction; and (4) an
8  injunction is in the public's interest. *Winters v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376
9  (2008) (citations omitted); *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir.
10 2010).

11 In a patent infringement action, the court performs a two part inquiry in assessing the
12 plaintiff's likelihood of success on the merits. *See Markman v. Westview Instruments, Inc.*, 52 F.3d
13 967 (Fed. Cir. 1995) (*en banc*). "The first step is determining the meaning and scope of the patent
14 claims asserted to be infringed." *Id*. at 976. The second step is comparing the properly construed
15 claims to the allegedly infringing device. *Id*. A finding of infringement requires that each element
16 of the asserted patent claim is found in the accused device. *Southwall Techs., Inc. v. Cardinal IG,
17 Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995); *Celeritas Techs. Inc. v. Rockwell Int'l Corp.*, 150 F.3d
18 1354, 1360 (Fed. Cir. 1998).

19 However, if the party opposing the injunction raises "a substantial question concerning
20 infringement or validity [of the patent], meaning that it asserts a defense that [a plaintiff] cannot
21 prove lacks substantial merit," then a plaintiff is not likely to succeed on the merits of his patent
22 infringement claim and a preliminary injunction should not issue. *Oakley Inc. v. Sunglass Hut
23 Intern.*, 316 F.3d 1331, 1339-40 (Fed. Cir. 2003). "[W]hile 'the burden of proving invalidity is with
24 the party attacking validity,' the party seeking the injunction 'retains the burden of showing a
25 reasonable likelihood that the attack on the patent's validity would fail.'" *Id*. (quoting *H.H.*

26

*Robertson Co., v. United Steel Deck, Inc.*, 820 F.2d 384, 387 (Fed. Cir. 1987). Further, because "[v]ulnerability is the issue at the preliminary injunction stage," a showing of a substantial question of invalidity "requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Amazon, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001).

**III. Discussion**

In its motion for a preliminary injunction, Light Guard argues that it is likely to succeed on the merits of its patent infringement action because Spot Devices's RS 200 and RS 320 designs infringe Claim 1 of the '742 patent. *See* Doc. #2.

In opposition, Spot Devices argues that Light Guard is not likely to succeed on the merits of its patent infringement action because the '742 patent is invalid as a matter of law. *See* Doc. #20. In particular, Spot Devices contends that the '742 patent is invalid because: (1) it is anticipated by Harrison's prior use of the system; (2) it is obvious in light of the prior art; and (3) it is unenforceable for Harrison's inequitable conduct before the Patent Examiner during the initial patent application. *See Id*. The court shall address each of Spot Devices's invalidity defenses below to determine if any affirmative defense raises a substantial question of patent invalidity sufficient to show that Light Guard is not likely to succeed on the merits of its complaint.

**A. Anticipation**

An issued patent is presumed valid by statute. 35 U.S.C. § 282. However, a patent claim is invalid as anticipated under 35 U.S.C. § 102 if a single reference, either printed publication or prior use, published more than one year before the date of the patent application, discloses, expressly or inherently, every limitation of the claim such that a person of ordinary skill in the art could practice the invention without experimentation. 35 U.S.C. § 102(b); *see also Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). A reference is a "printed publication" if it was sufficiently accessible to the public interested in the design or application. *In re Klopfenstein*, 308 F.3d 1345, 1348 (Fed. Cir. 2004). A reference is a "public use" if it was on

file with a public agency or generally available to the public. *See Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985). However, a public use that would otherwise invalidate a patent as anticipated does not invalidate a patent if that public use qualifies as experimental use. *See Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1211 (Fed. Cir. 2005) (experimentation is sufficient to negate prior use if that use was for testing and was performed to perfect claimed features or test new features inherent in the claimed invention).

In 1993, Harrison proposed an IRWL system to the city council of the City of Santa Rosa, California. *See* Doc. #22, Exhibit N (minutes of committee meeting). Along with his proposal he submitted design plans that were accepted and logged in the public meeting. *See* Doc. #22, Exhibit M (Harrison's proposal to City of Santa Rosa). Harrison's proposal was accepted and the system was installed in 1994. Spot Devices contends that the proposal to the city and subsequent installation of the patented design constitute prior public use and publication of the design and, therefore, anticipate Harrison's 1996 patent application.[2]

The court has reviewed the documents and pleadings on file in this matter and finds that neither the proposal nor the subsequent installation anticipates the '742 patent because the proposal and installation were for an experimental use of an untried design. The proposal to the city specifically stated that Harrison was requesting permission to experiment with an IRWL system. Doc. #22, Exhibit N. Further, the system was implemented in the city to determine whether the design would provide notice to oncoming traffic of a pedestrian in the crosswalk, withstand environmental factors, and withstand vehicle weight. *See* Doc. #3, Harrison Decl., Exhibit B, ¶3; Doc. #34, Exhibit I, Harrison Depo., 72:15-74:23. Finally, the initial manufactured signal heads were designated solely as "prototype units for testing purposes only." Doc. #34, Exhibit C.

---

[2] For purposes of this motion, the court finds that the effective application date for the '742 patent is July 11, 1996, when Harrison submitted his first application that met all statutory disclosure requirements.

1  Therefore, because Harrison's prior proposal and use were for experimentation of the design
2  ultimately patented, the court finds that Spot Devices has not raised a substantial question that the
3  '742 patent is invalid as anticipated.

4  **B. Obviousness**

5  Under the Patent Act, a patent may be deemed invalid as a matter of law "if the differences
6  between the subject matter sought to be patented and the prior art are such that the subject matter as
7  a whole would have been obvious at the time the invention was made to a person having ordinary
8  skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

9  A patent invention is obvious if a person of ordinary skill in the art would have had a reason
10 to combine the particular elements or technologies in the way the claimed new invention does. *KSR*
11 *Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). A person of ordinary skill in the art is a person
12 presumed to think "along the line of conventional wisdom in the art and is not one who undertakes
13 to innovate, whether by patient, and often expensive, systematic research or by extraordinary
14 insights." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

15 In reviewing a challenged patent, a design or invention is obvious when it "simply arranges
16 old elements with each performing the same function it had been known to perform" and yields no
17 more than one would expect from such an arrangement. *Sakraida v. AG Pro, Inc.*, 425 U.S. 273,
18 282 (1976). Comparatively, an invention is not obvious "where vague prior art does not guide an
19 inventor toward a particular solution." *Bayer Schering Pharma AG v. Barr Labs., Inc.*, 575 F.3d
20 1341, 1347 (Fed. Cir. 2009). Further, there can be no finding of obviousness "where the prior art
21 gave only general guidance as to the particular form of the claimed invention or how to achieve it."
22 *Id.* (quoting *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988)).

23 Although the ultimate determination of obviousness under § 103 is a question of law, it is
24 based on several underlying factual findings, including (1) the scope and content of the prior art; (2)
25 the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and
26

the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and the failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

### 1. Person of Ordinary Skill

The only evidence before the court of a person of ordinary skill in the art comes from Spot Devices's retained expert, Dr. Kevan Shafizadeh ("Dr. Shafizadeh"),[3] who provided a declaration in support of Spot Devices's opposition to the motion for a preliminary injunction. Doc. #22. Dr. Shafizadeh opines that a person of ordinary skill in the relevant art would be a person "possessing a bachelor's degree in electrical, mechanical, or civil engineering, or equivalent work experience, and at least 1-2 years in experience in traffic engineering." Doc. #22, Dr. Shafizadeh Decl., ¶4. Dr. Shafizadeh contends that such experience is necessary to fully understand the basics of road construction and traffic patterns, but that a master's degree or other super-technical experience is unnecessary to understand the design or purpose of IRWL systems, including the '742 patent. *Id*. For purposes of this motion, the court accepts Dr. Shafizadeh as a person of ordinary skill in the relevant art.

### 2. Prior Art

Spot Devices argues that the '742 patent is invalid as obvious in light of several prior art references including: (1) Japanese Utility Model Patent Journal 49-[1974]-74192 issued to Sane Kanasashi on June 27, 1974 ("the *Kanasashi* reference");[4] Great Britain Patent no. 706,027 issued to Robert Bruce on March 24, 1954 ("the *Bruce* reference");[5] United States Patent no. 5,412,381 issued to Martin E. Dicks on May 2, 1995 ("the *Dicks* reference");[6] and United States Patent

---

[3] Dr. Shafizadeh is an associate professor at California State University, Sacramento, and both a licensed professional civil engineer and a registered professional traffic operations engineer in the State of California. Doc. #22, Dr. Shafizadeh Decl., ¶8-11.

[4] A copy of this reference is attached to Dr. Shafizadeh's declaration. *See* Doc. #22, Exhibit P.

[5] A copy of this reference is attached to Dr. Shafizadeh's declaration. *See* Doc. #22, Exhibit Q.

[6] A copy of this reference is attached to Dr. Shafizadeh's declaration. *See* Doc. #22, Exhibit S.

7

no. 4,668,120 issued to John C. Roberts on May 26, 1987 ("the *Roberts* reference").[7]

The court has reviewed the relevant prior art in light of Dr. Shafizadeh's person of ordinary skill in the art and finds that Spot Devices has raised a substantial question concerning the validity of the '742 patent. Specifically, the court finds that the *Kanasashi* reference, titled "Flashing Light Device for Crosswalk," discloses nearly all elements of Claim 1 in the '742 patent. In particular, the *Kanasashi* reference discloses (1) a pedestrian crosswalk (2) with a plurality of signal head members (3) extending at least some distance across said roadway and (4) with a light source directing a beam toward traffic and parallel to the roadway surface (5) which is activated by a signal apparatus. *See* Doc. #22, Exhibit P, Figure 1 (identifying a pedestrian crosswalk, activation means, and a plurality of signal head members); Figure 2 (identifying the signal head members extending at least some distance across a roadway); Figure 3 (portraying a side view of the signal head member with a beam of light directed toward traffic and parallel to the roadway); *see also* Doc. #22, Dr. Shafizadeh Decl., ¶70. However, *Kanahashi* does not disclose a signal head member mounted entirely on or above the roadway surface as contemplated by Claim 1. *See* Doc. #22, Exhibit P, Figure 3 (showing the signal head member partially buried within the roadway surface). Thus, based solely on the *Kanasashi* reference, the court is presented with prior art containing nearly every element of Claim 1 of the '742 patent.

Adding the *Bruce* reference to the court's review, which discloses a pedestrian warning device with a plurality of signal head members (very close in design to the signal head members in the '742 patent)[8] mounted entirely on and above the roadway and directing a beam of light towards oncoming traffic and parallel to the roadway surface,[9] the court is presented with prior art

---

[7] A copy of this reference is attached to Dr. Shafizadeh's declaration. *See* Doc. #22, Exhibit T.

[8] *Compare* Figure 4 in the *Bruce* reference (portraying a side view of the contemplated device) with Figure 10 of the '742 patent (also a side view of the contemplated device).

[9] Light Guard argues that the *Bruce* reference discloses a beam of light directed at a 45 degree angle through gaps in parallel ribs so that there is no beam of light parallel to the road. *See* Doc. #33. But, the design

disclosing all elements of Claim 1. *See* Doc. #22, Exhibit Q; *see also*, Doc. #22, Dr. Shafizadeh Decl., ¶70. Further, Dr. Shafizadeh opined that a person skilled in the art who desired to use the crosswalk safety system disclosed in *Kanasashi* but did not want to undertake major excavation of the roadway to implement the system would be motivated to combine *Kanasashi* with the on roadway mounted signal head members disclosed in *Bruce* thereby coming to the design stated in Claim 1 of the '742 patent. Doc. #22, Dr. Shafizadeh Decl., ¶70. Thus, the court finds that a person of ordinary skill in the art would have had a reason to combine *Kanasashi* with *Bruce* to come to the claimed IRWL design here.

        Additionally, the remaining *Dicks* and *Roberts* references further support Spot Devices's contention that the '742 patent is invalid as obvious. The *Dicks* reference, titled "Signaling Means," discloses a pedestrian crosswalk apparatus comprising a plurality of signal head members mounted entirely on a roadway surface that can be activated by a separate activation means. *See* Doc. #22, Exhibit S. Further, the *Roberts* reference discloses reflective highway traffic markers used to delineate pedestrian crosswalks. *See* Doc. #22, Exhibit T. Given the teachings of these two patents, Dr. Shafizadeh opined that "one skilled in the art would understand that the warning lights could be mounted such that the light beams would be directed perpendicular to the crosswalk and directed towards oncoming traffic" which, in conjunction with the disclosures in *Kanasashi* and *Bruce*, once again encapsulate all the limitations of Claim 1. Doc. #22, Dr. Shafizadeh Decl., ¶71. Thus, taking all the prior art references together, the court finds that Spot Devices has raised a substantial question concerning the obviousness of the '742 patent in light of the prior art, and, thereby, the validity of Claim 1.

///

---

of the signal head member in the *Bruce* reference indicates otherwise. *See* Doc. #22, Exhibit Q, Col. 1:40-2:45 ("[T]he construction being such that the light rays from the source of illumination pass directly through the glazed side or sides of the housing and through the gaps to give a clear indication to oncoming traffic of the presence of the crossing").

**C. Inequitable Conduct**

Spot Devices argues that the '742 patent is unenforceable as a matter of equity for Harrison's failure to provide the *Kanasashi* reference, a known material piece of prior art, to the Patent Examiner during the initial patent application and the subsequent re-examination hearing.

A plaintiff's inequitable conduct during the patent application process "is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, ___ F.3d ____, 2011 U.S. App. LEXIS 10590, *18 (May 25, 2011). Unlike other statutory validity defenses, which are claim specific, "inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* at *28 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.3d 867, 877 (Fed. Cir. 1988).

To establish the affirmative defense of inequitable conduct in a patent infringement action, an accused infringer must show that (1) an individual associated with the prosecution of the patent application at issue made affirmative misrepresentations of fact, failed to disclose material information, or submitted false material information; and (2) the individual acted with the specific intent to deceive the Patent and Trademark Office ("PTO"). *Therasense, Inc.*, 2011 U.S. App. LEXIS 10590, *30-33; *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

Here, it is undisputed that at the time he submitted the '742 Patent, Harrison was aware of the existence of the *Kanasashi* reference. *See* Doc. #24, Rathinasamy Decl., Exhibit A (letter from Harrison's patent attorney Larry Johnson identifying the *Kanasashi* reference as possible pertinent prior art). Thus, the remaining questions before the court are (1) whether the *Kanasahi* reference was material to the '742 patent and (2) whether Harrison withheld the *Kanasashi* reference in order to deceive the Patent Examiner. *See Therasense, Inc.*, 2011 U.S. App. LEXIS 10590, *30-33.

///

///

### 1. Materiality

"The materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc.*, 2011 U.S. App. LEXIS 10590, *37. "[P]rior art is but-for material if the [Patent Examiner] would not have allowed a claim had it been aware of the undisclosed prior art." *Id*. "Hence, in assessing the materiality of a withheld reference, the court must determine whether the [Patent Examiner] would have allowed the claim if it had been aware of the undisclosed reference." *Id*. "In making this patentability determination, the court [applies] the preponderance of the evidence standard and give claims their broadest reasonable construction." *Id*.

After reviewing the *Kanasashi* reference,[10] the court finds that the reference is but for material. Looking at Claim 1 of the '742 patent in light of the *Kanasashi* reference, and the declaration provided by Dr. Shafizadeh, the court finds that the Patent Examiner would not have allowed the issuance of the '742 patent. Initially, the court notes that the Patent Examiner would likely find the application obvious after comparing the figures in the *Kanasashi* reference with the nearly identical figures of the '742 patent.[11] Further, after reviewing *Kanasashi*, Dr. Shafizadeh opined that the reference was material and would have impacted the Patent Examiner's decision in issuing the '742 patent. Doc. #22, Dr. Shafizadeh Decl., ¶7. Finally, the court finds it telling that Harrison, himself, knew that the *Kanasashi* reference was probably material because his patent attorney at that time, Larry Johnson, sent him a letter identifying the *Kanasashi* reference, and his brother, Mike Harrison, who was working on the electrical design, viewed *Kanasashi* as a "major problem" as "the drawings show what appears to be exactly what we are trying to patent." Doc. #24, Exhibit A; Exhibit B-1. Therefore, based on the record before the court, the court finds

---

[10] *See supra* Section B Obviousness.

[11] *Compare* Figure 1 of the *Kanasashi* reference with Figure 2 of the '742 patent (both figures portraying a pedestrian crosswalk with a plurality of signal head members extending at least some distance across a roadway activated by an activation means) and Figure 3 of the *Kanasashi* reference with Figure 10 of the '742 patent (both figures portraying a side view of the signal head member directing a beam of light toward oncoming traffic and parallel to the roadway).

that the *Kanasashi* reference is material to the '742 patent.

### 2. Intent to Deceive

"[A] district court may infer intent from indirect and circumstantial evidence." *See Therasense, Inc.*, 2011 U.S. App. LEXIS 10590, *34 (citing *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009)). However, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (quoting *Star*, 537 F.3d at 1366). "[W]hen there are multiple reasonable inferences that may be drawn [from the surrounding circumstances], intent to deceive cannot be found." *Id.*; *see also Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.").

Spot Devices contends that the single most reasonable inference to be drawn from the fact that Harrison did not provide the material *Kanasashi* reference to the Patent Examiner was to deceive the patent office into issuing the patent. Spot Devices bases its conclusion on the facts already addressed above, namely, that Harrison knew the reference was likely material from the letters prepared by counsel and his brother, and that a comparison of the figures between the two patents show nearly identical designs. *See* Doc. #24, Exhibit B-1 (identifying *Kanasashi* as a "major problem" because "the drawings show what appears to be exactly what we are trying to patent").

In opposition, Light Guard argues that there was no intent to deceive the Patent Examiner by withholding the reference because after having the *Kanasashi* reference fully translated, Harrison believed the reference to be cumulative of other art already provided and not material to the '742 patent. Specifically, both Harrison and Larry Johnson contend that, at the time they submitted the '742 patent, they believed that the signal head members in *Kanasashi* were "buried"

in the roadway based on the translation they received and, therefore, were very different from the claimed design where the signal head members are mounted on and above the roadway surface. *See* Doc. #36, Johnson Decl., ¶7 ("Burying signal heads in the road is very different from Michael Harrison's invention . . . .").

After reviewing all the relevant evidence in this matter, the court finds that there is more than one reasonable inference for why Harrison failed to disclose the *Kanasashi* reference. One, espoused by Spot Devices, is that Harrison intended to deceive the Patent Examiner into issuing an otherwise obvious patent. Another reasonable inference, however, is that argued by Light Guard, that Harrison and his patent application counsel believed the *Kanasashi* reference to be immaterial and cumulative based on the signal heads being buried in the roadway while the '742 patent signal head members are mounted on and above the roadway surface. Because there is more than one reasonable inference, the court cannot conclude that Harrison had an intent to deceive the Patent Examiner by withholding the *Kanasashi* reference. *See Therasense, Inc.*, 2011 U.S. App. LEXIS 10590, *34 ("[W]hen there are multiple reasonable inferences that may be drawn [from the surrounding circumstances], intent to deceive cannot be found."). Therefore, the court finds Spot Devices has not raised a substantial question concerning the enforceability of the '742 patent for Harrison's alleged inequitable conduct.

**IV.   Conclusion**

Because the court finds that Spot Devices has raised a substantial question concerning the validity of the '742 patent in light of the prior art under 35 U.S.C. § 103, the court finds that Light Guard is not likely to succeed on the merits of its patent infringement claim. Therefore, the court shall deny Light Guard's motion for a preliminary injunction.

///

///

///

1    IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (Doc. #2) is
2 DENIED.
3    IT IS SO ORDERED.
4    DATED this 22nd day of July, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE